**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL LOYD** | : |
| **Individually and on Behalf** | : |
| **of a Class of Persons Similarly Situated** | : |
| 493 West Martin Street | : |
| East Palestine, Ohio 44413 | : |
| | : CASE NO. _____ |
| and | : |
| | : |
| **ZOEY SPELLMAN** | : JUDGE _____ |
| **Individually and on Behalf** | ; |
| **of a Class of Persons Similarly Situated** | : |
| 493 West Martin Street | : |
| East Palestine, Ohio 44413 | : |
| | : |
| and | : |
| | : **CLASS ACTION** |
| **JENNIFER GRAY** | : **COMPLAINT** |
| **Individually and on Behalf** | : |
| **of a Class of Persons Similarly Situated** | : |
| 268 East Clark Street | : |
| East Palestine, Ohio 44413 | : |
| | : |
| and | : |
| | : |
| **MOORE'S TRUCKING** | : |
| **On Behalf of itself and a** : | |
| **Class of Businesses Similarly Situated** | : : |
| 129 ½ South Street | : |
| East Palestine, Ohio 44413 | : |
| | : **JURY DEMAND ENDORSED** |
| Plaintiffs, | : **HEREON** |
| | : |
| -vs- | : |
| | : |
| **NORFOLK SOUTHERN RAILWAY** | : |
| **COMPANY** | : |
| c/o Statutory Agent | : |
| Corporation Service Company | : |
| 3366 Riverside Drive, Suite 103 | : |
| Upper Arlington, Ohio 43221 | : |
| | : |

1

```
and                                          :
                                             :
NORFOLK SOUTHERN CORP.                       :
650 West Peachtree Street NW                 :
Atlanta, Georgia 30308                       :
                                             :
                  Defendants.                :
```

## CLASS ACTION COMPLAINT

Plaintiffs Michael Loyd, Zoey Spellman, Jennifer Gray, and Moore's Trucking (hereinafter collectively "Plaintiffs"), Individually and on behalf of a Class of Persons similarly situated (hereinafter collectively the "Putative Classes"), for their Class Action Complaint against Defendants Norfolk Southern Railway Company and Norfolk Southern Corp, hereby state as follows:

## STATEMENT OF THE CASE

1.      This is a class action brought on behalf of Plaintiffs Michael Loyd, Zoey Spellman, Jennifer Gray, and Moore's Trucking (hereinafter the "Representative Plaintiffs") and other persons similarly situated who were adversely affected by a train derailment and chemical spill which occurred on February 3, 2023, in or near East Palestine, Ohio, involving a train negligently operated by Defendant Norfolk Southern Railway Company (hereinafter "NSR") and/or Defendant Norfolk Southern Corporation (hereinafter "NS"). The train was hauling toxic chemicals, including vinyl chloride, and the fire resulting from the derailment released toxic chemicals into the air, soil, and water which caused and will continue to cause direct and substantial damages to Representative Plaintiffs and a class of other individuals similarly situated (hereinafter the "Putative Classes").

2.     As a result of the negligence of Defendant NSR and/or Defendant NS in causing the derailment and chemical spill, the authorities ordered the immediate evacuation of all homes and businesses within a two-mile radius of the site of the derailment. Representative Plaintiffs, Michael Loyd, Zoey Spellman, Jennifer Gray, and Moore's Trucking and the other members of the Putative Classes were subject to a mandatory evacuation and/or forced to evacuate their homes and businesses.

## PARTIES

3.     Representative Plaintiffs Michael Loyd, Zoey Spellman and Jennifer Gray are residents of Columbiana County, Ohio who resided and/or owned real property within a two-mile radius of the site of the train derailment or who were present in the vicinity of the site and are representatives of the Putative Class they seek to represent.

4.     Representative Plaintiff Michael Loyd is a citizen of the State of Ohio, residing at 493 West Martin Street in the Village of East Palestine in Columbiana County, Ohio.

5.     Representative Plaintiff Zoey Spellman is a citizen of the State of Ohio, residing at 493 West Martin Street in the Village of East Palestine in Columbiana County, Ohio.

6.     Representative Plaintiff Jennifer Gray is a citizen of the State of Ohio, residing at 268 East Clark Street in the Village of East Palestine in Columbiana County, Ohio.

7.     Representative Plaintiff Moore's Trucking is a Pennsylvania corporation with its principal place of business in Ohio, doing business at 129 ½ South Street in the Village of East Palestine in Columbiana County, Ohio.

8.     The Representative Plaintiffs and other members of the Putative Classes were among the hundreds of persons and businesses who were adversely affected by the train derailment in that they were exposed to toxic chemicals, fumes, and carcinogens and/or ordered to be

3

evacuated from their residences and businesses as a result of the train derailment and resulting chemical spill.

9.      Defendant NSR is a Class I railroad organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business in Norfolk, Virginia. NSR operates on approximately 19,300 miles of track in 22 states and the District of Columbia and serves every major container port in the eastern United States. NSR is a major transporter of industrial products including toxic chemicals.

10.     Defendant NSR is a wholly owned subsidiary of Defendant NS. Defendant NS is organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business in Atlanta, Georgia. NS is a publicly traded company.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d), in that this is a class action, as defined in 28 U.S.C. §1332(d)(1)(B), in which the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

12.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because there is complete diversity of citizenship between the Plaintiffs and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

13.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because the train derailment which is the subject of this action occurred in Columbiana County in the Northern District of Ohio and the Representative Plaintiffs and many of the other members of the Putative Classes they seek to represent reside in the Northern District of Ohio.

## COMMON FACTUAL ALLEGATIONS

14.     On February 3, 2023, a NSR freight train was transporting hazardous chemicals, including vinyl chloride, from the Terminal Railroad Association of St. Louis yard in Madison, Illinois, to NSR's Conway Yard in Conway, Pennsylvania. The freight train was made up of 141 loaded rail cars, nine empty rail cars, and three locomotives.

15.     Twenty of the 141 loaded rail cars on the freight train were classified as carrying hazardous materials. Fourteen of those rail cars were carrying vinyl chloride. The others were carrying combustible liquids, including butyl acrylate and benzene residue.

16.     Vinyl chloride is an unstable toxic chemical and a known carcinogen. Exposure to vinyl chloride can cause an increased risk of a rare form of liver cancer (hepatic angiosarcoma), as well as primary liver cancer (hepatocellular carcinoma), brain and lung cancers, lymphoma, and leukemia. An airborne concentration of vinyl chloride at 8,000 ppm for only five minutes can cause dizziness. Drowsiness, loss of coordination, visual and auditory abnormalities, disorientation, headache, nausea, and burning and tingling of the extremities can result as the airborne level increases. Exposure to high concentrations can lead to death due to central nervous system and respiratory depression.

17.     On February 3, 2023, at approximately 8:55 p.m., 50 of the freight train's rail cars, including ten rail cars carrying hazardous materials, derailed in the Village of East Palestine in Columbiana County, which is located near the Ohio and Pennsylvania border.

18.     Upon information and belief, the derailment and resulting chemical spill was caused by Defendants' negligence in the operation of the train, defects in Defendant NSR's track system, and/or defects in one or more of the rail cars, including a mechanical failure of an axle on one of the rail cars.

19.     The derailment caused a number of the freight train's rail cars to catch fire. The fire lasted for several days. A decision was made to burn the chemicals, emitting toxins and a plume of smoke into the environment. This toxic chemical fire released dense clouds of noxious smoke fumes and vapors into the air, forcing the evacuation of thousands of individuals residing within a two-mile radius of the site of the derailment. Upon information and belief, the release of the toxic chemicals also contaminated soil and groundwater in the area.

20.     Representative Plaintiffs and other members of the Putative Classes sustained physical and emotional injuries as a result of the exposure to the toxic substances, toxic fumes, and carcinogens from the chemical spill.

21.     Representative Plaintiffs and other members of the Putative Classes were forced to evacuate their businesses and homes as a result of the train derailment. Some had to spend the night in shelters, while others found accommodations outside the area. Businesses in the area were closed and access to the area was blocked.

22.     Based upon information and belief, properties belonging to the Representative Plaintiffs and other members of the Putative Classes may continue to be uninhabitable for an extended period of time.

23.     As a result of the derailment and the release of toxic chemicals into the surrounding environment, Plaintiffs and other members of the Putative Classes have suffered a decrease in the market value of their properties.

## CLASS ACTION ALLEGATIONS

24.     Representative Plaintiffs bring this action under Fed. R. Civ. P. 23(a), Fed. R. Civ. P. 23(b)(1), Fed. R. Civ. P. 23(b)(2), Fed. R. Civ. P. 23(b)(3), and Fed. R. Civ. P. (b)(4).

25.     Representative Plaintiffs bring this action on behalf of themselves, and other members of the Putative Classes defined as follows:

(a)     **Medical Monitoring Class**:  All individuals who resided within a 15-mile radius (the "Class Zone") of 1020 East Taggart Street, East Palestine, Ohio 44413, as of February 3, 2023;

(b)     **Residential Property Damage Class**:  All individuals who owned, leased, or resided in a property within a 15-mile radius (the "Class Zone") of 1020 East Taggart Street, East Palestine, Ohio 44413, as of February 3, 2023.

(c)     **Business Class**: All individuals and entities who owned and/or operated a business, commercial property, or farmland within a 15-mile radius (the "Class Zone") of 1020 East Taggart Street, East Palestine, Ohio 44413, as of February 3, 2023.

26.     Excluded from the Putative Classes are Defendants and their affiliates, parents, or subsidiaries; the Judge(s) to whom this matter is assigned and their immediate family and staff; government entities; and any individual who makes a timely election to be excluded from the Putative Classes.

27.     Excluded from the Medical Monitoring Class is any individual who was not present in the Class Zone on or after February 3, 2023.

28.     Plaintiffs reserve the right to amend the class definitions to conform to the evidence identified during discovery.

29.     The proposed Putative Classes meet the criteria for certification pursuant to Rule 23(a), (b)(2), (b)(3), and (c)(4).

30.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements for class certification set forth in Fed. R. Civ. P. 23(a).

31.     **Numerosity (Rule 23(a)(1)):** The members of the Putative Classes are so numerous that it is impractical to individually join all its members. While the exact number and specific identification of the members of the Putative Classes are unknown to Representative Plaintiffs at this time and can only be ascertained through appropriate discovery and notice, there were approximately 4,500 residents of East Palestine, Ohio as of February 3, 2023. Many, if not all of these individuals were exposed to harmful chemicals as a result of Defendants' train derailment, or their properties or enjoyment thereof was impacted by Defendants' train derailment. Representative Plaintiffs are informed and believe that members of the Putative Classes number in the hundreds, if not thousands.

32.     **Commonality (Rule 23(a)(2)) and Predominance (Rule 23(b)(3)):** The questions of fact and law common to all members of the Putative Classes predominate over any questions affecting only individual members of the Putative Classes. The common questions of fact and law that impact Defendants' liability do not vary from member to member and may be determined without reference to the individual circumstances of any individual member of the Putative Classes. These common questions of fact and law include, but are not limited to, the following:

(a)     Whether Defendants' railway operations were conducted negligently, recklessly, or in an otherwise tortious manner;

(b)     Whether Defendants created a nuisance;

(c)     Whether Defendants are liable for a statutory nuisance under R.C. 3704.03;

(d)     Whether Defendants engaged in abnormally dangerous activity giving rise to strict liability for any resulting damage;

8

(e)     Whether Defendants trespassed on property owned or occupied by the Representative Plaintiffs and members of the Putative Classes;

(f)     Whether Defendants' conduct injured the Representative Plaintiffs and other members of the Putative Classes;

(g)     Whether medical monitoring is available to provide early detection benefits to members of the Medical Monitoring Class; and

(h)     Whether Defendants' conduct was willful and wanton and whether they acted with conscious disregard for the rights and safety of other persons causing substantial harm, subjecting them to liability for punitive and/or exemplary damages.

33.     **Typicality (Rule 23(a)(3)):** The claims of the Representative Plaintiffs are typical of the claims of the other members of the Putative Classes in that they owned, rented, and/or resided in real property located in East Palestine within a fifteen-mile radius of the train derailment on February 3, 2023, were present when the toxic chemicals were released by the train derailment, and were required to evacuate their homes and businesses as a result of the resulting chemical spill.

34.     The Representative Plaintiffs and members of the Putative Classes were all exposed to vinyl chloride and the other toxic chemicals released in the chemical spill. The claims of the Representative Plaintiffs all arise from the same event or course of conduct giving rise to the claims of all members of the Putative Classes. The Representative Plaintiffs will pursue the same claims and legal theories seeking the same damages as the members of the Putative Classes.

35.     **Adequacy (Rule 23(a)(4)):** The Representative Plaintiffs are adequate representatives of the Putative Classes because they are members of one or both Putative Classes and are committed to pursuing this matter against Defendants to obtain relief for the Putative Classes. The Representative Plaintiffs will fairly and adequately protect the interests of the

Putative Classes. The Representative Plaintiffs' interests are identical to the interests of the members of the Putative Classes they will represent. The interests of the Representative Plaintiffs and the interests of the members of the Putative Classes are not antagonistic and can effectively be addressed in the context of a class action.

36.     Counsel for the Representative Plaintiffs are experienced litigators who have broad experience handling this type of litigation. They have successfully litigated multiple class actions. They are experienced in personal injury claims, property damage claims, nuisance claims, environmental claims, and claims seeking medical monitoring relief. They have represented numerous railroad employees in the prosecution of their claims under the Federal Employers Liability Act, 45 U.S.C. §51, and the Federal Railroad Safety Act. Counsel are fully qualified to prosecute the claims of the class and will vigorously do so.

37.     A class action may be maintained under Fed. R. Civ. P. 23(b)(1) because, in addition to satisfying the requirements of Fed. R. Civ. P. 23(a), prosecuting separate actions on behalf of each individual member of the Putative Classes would create a risk of inconsistent adjudications with respect to individual class members that would establish incompatible standards of conduct applicable to Defendant NSR and Defendant NS in the individual cases.

38.     **Superiority (Rule 23(b)(3)):** A class action may also be maintained under Fed. R. Civ. P. 23(b)(3) since questions of law and fact common to the class members predominate over any questions affecting only individual members of the Putative Classes.

39.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. This case involves sophisticated scientific and technical issues requiring expert testimony and substantial discovery. A class action would avoid adjudication of

the liability of Defendant NSR and Defendant NS in hundreds of separate lawsuits when a class action would avoid duplication of costs, attorney's fees, and demand upon this Court's resources.

40. Because environmental claims such as the ones asserted in this action are expensive to maintain, most members of the Putative Classes would likely find the cost of adjudicating their individual claims to be unduly prohibitive, giving them no adequate remedy at law. It is impractical for the members of the Putative Classes to individually control the prosecution of separate actions against Defendant NSR and Defendant NS, and the individual class members are not interested in exercising this control. Absent a class action, members of the Putative Classes will have no reasonable way to remedy their harm, and may continue to incur damages, and the misconduct of Defendants will continue.

41. **Injunctive and Declaratory Relief:** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendants, through their uniform conduct, acted and refused to act on grounds applicable to the Putative Classes as a whole, making injunctive and declaratory relief appropriate.

42. There are also particular issues appropriate for certification under Rule 23(c)(4) and, in the alternative to certification under Rule 23(b)(3), certification of these particular issues would advance the disposition of this matter and the parties' interests.

<u>**FIRST CAUSE OF ACTION**</u>
**[Negligence]**

43. Representative Plaintiffs incorporate all allegations contained in the preceding paragraphs as if fully rewritten herein.

44. At all times relevant herein, Defendants NSR and NS had custody and control of the freight train and the railroad track between the Terminal Railroad Association of St. Louis Yard in Madison Illinois and NSR's Conway Yard in Conway, Pennsylvania including, but not

limited to, the track running through the Village of East Palestine located in Columbiana County near the Ohio and Pennsylvania border.

45.     Defendants NSR and/or NS owe a duty of care to the Representative Plaintiffs and members of the Putative Classes, as well as to the general public, to operate, maintain, inspect, and repair the trains, including the rail cars, and the railroad tracks upon which those trains are operated to prevent train derailments.

46.     Defendants' duty of care is heightened when those trains and railroad tracks are being used to transport hazardous materials including toxic and hazardous chemicals that create a risk of contamination and the release of toxic pollutants should a derailment occur.

47.     Defendants knew or should have known of the dangers of failing to operate, maintain, inspect, and repair trains, rail cars, and railroad tracks in a reasonably careful manner and that its activities would present an unreasonable risk of harm to residents and property owners in the vicinity of East Palestine and other communities unless reasonable care was exercised to prevent such harm.

48.     Defendants NSR and NS failed to exercise reasonable care under the circumstances and breached the duty they owed to Representative Plaintiffs and members of the Putative Classes to operate, maintain, inspect, and repair trains, rail cars, and railroad tracks in a reasonably careful manner by, among other things:

(a)     Failing to properly design the railroad track;

(b)     Failing to properly operate, inspect, maintain, and repair the railroad track and the rail cars for the operations being conducted during the ordinary course of business, particularly when transporting hazardous materials;

(c)     Acting in a careless and negligent manner without due regard for the safety of others;

(d)     Failing to establish proper procedures or systems including, but not limited to, alarm systems for identifying malfunctioning equipment and rail cars to prevent derailments while transporting hazardous materials and failing to establish safety procedures in the event of a malfunction;

(e)     Failing to properly load rail cars consistent with accepted practices;

(f)     Failing to avoid populated areas when transporting hazardous materials;

(g)     Failing to provide sufficient instruction and training to their personnel;

(h)     Failing to provide adequate staffing;

(i)     Failing to take appropriate action to avoid or mitigate the derailment that occurred on February 3, 2023, in the Village of East Palestine;

(j)     Failing to react to danger signs;

(k)     Failing to timely evacuate an appropriate geographical area to avoid exposing persons to hazardous materials; and,

(l)     Engaging in such other acts or omissions creating a risk of injury to person or property as will be discovered and proven at trial.

49.     As a direct and proximate result of Defendants' breach of their duty to Representative Plaintiffs and members of the Putative Classes, a freight train owned and/or operated by Defendants that was carrying hazardous materials derailed in the Village of East Palestine and caused a chemical spill which required the immediate evacuation of all homes and businesses within a two-mile radius of the site of the derailment.

50.     As a direct and proximate result of Defendants' breach of their duty to Representative Plaintiffs and members of the Putative Classes, a toxic chemical fire released dense clouds of noxious smoke fumes and vapors into the air, forcing the evacuation of thousands of individuals residing within a two-mile radius of the site of the derailment. Upon information and belief, the release of the toxic chemicals also contaminated soil and groundwater in the area.

51.     As a direct and proximate result of Defendants' breach of their duty to Representative Plaintiffs and members of the Putative Classes, Representative Plaintiff and members of the Putative Classes were exposed to toxic chemicals including, but not limited to, vinyl chloride, and sustained physical and emotional injuries as a result of the exposure to the toxic substances, toxic fumes, and carcinogens from the chemical spill.

## SECOND CAUSE OF ACTION
### [Trespass]

52.     Representative Plaintiffs incorporate all allegations contained in the preceding paragraphs as if fully rewritten herein.

53.     Defendants NSR and/or NS caused or permitted noxious fumes, chemicals, carcinogens, odors, and hazardous substances to enter the real property owned and/or occupied by Representative Plaintiffs and members of the Putative Classes without their authorization or consent.

54.     Defendants knew or should have known that the hazardous chemicals being transported were hazardous and harmful to the environment and a danger to real property, animals, and human beings, and that it was substantially certain that their use, emission, discharge, disposal, and/or release of these hazardous materials would cause injuries to Representative Plaintiffs and members of the Putative Classes and to their property.

14

55.     By allowing the noxious fumes, chemicals, carcinogens, odors, and hazardous substances to enter on to the properties and contaminate the properties without the authority or consent of Representative Plaintiffs and members of the Putative Classes, Defendants trespassed on their property, resulting in direct and substantial damage to the properties. In doing so, Defendants' conduct displayed indifference to and disregard for the rights Representative Plaintiffs and members of the Putative Classes to their land.

56.     As a direct and proximate result of Defendants' trespass, Representative Plaintiffs and members of the Putative Classes sustained injuries and damages including, but not limited to, the inability to enjoy their property and to use it in the manner they choose and the inability to avail themselves of their real property's value as an asset and/or source of collateral for financing.

57.     By releasing toxic chemicals onto property owned by Representative Plaintiffs and members of the Putative Classes, Defendants acted in violation of the law and in conscious disregard for the rights and safety of persons where there was a great probability of causing substantial harm. As a result, Defendants are liable to Representative Plaintiffs and members of the Putative Classes for exemplary and punitive damages.

### THIRD CAUSE OF ACTION
**[Private Nuisance]**

58.     Representative Plaintiffs incorporate all allegations contained in the preceding paragraphs as if fully rewritten herein.

59.     Defendants NSR and/or NS knew or should have known that the hazardous chemicals being transported were harmful to real property, animals, and human beings, and that the improper handling and transporting of these materials was substantially certain to cause injury to Representative Plaintiffs and members of the Putative Classes and to their property.

60.    Defendants NSR and/or NS caused or permitted noxious fumes, chemicals, carcinogens, odors, and hazardous substances to enter the real property owned and/or occupied by Representative Plaintiffs and members of the Putative Classes without their authorization or consent.

61.    By allowing the noxious fumes, chemicals, carcinogens, odors, and hazardous substances to enter the real property owned and/or occupied by Representative Plaintiffs and members of the Putative Classes without the authority or consent of Representative Plaintiffs and members of the Putative Classes, Defendants wrongfully invaded the personal legal rights and privileges of Representative Plaintiffs and members of the Putative Classes creating a nuisance.

62.    By allowing the noxious fumes, chemicals, carcinogens, odors, and hazardous substances to enter the real property owned and/or occupied by Representative Plaintiffs and members of the Putative Classes without the authority or consent of Representative Plaintiffs and members of the Putative Classes, Defendants wrongfully invaded the use and enjoyment of the property owned and/or occupied by Representative Plaintiffs and members of the Putative Classes creating a nuisance.

63.    As a direct and proximate result of Defendants' conduct which created a nuisance, Representative Plaintiffs and members of the Putative Classes sustained injuries and damages including, but not limited to, diminution of the value of their property, costs of repairs and remediation, loss of use of the property, and physical and emotional discomfort.

64.    As a direct and proximate result of Defendants' conduct which created a nuisance, Defendants restricted and/or infringed upon the use and enjoyment of the property owned and/or occupied by Representative Plaintiffs and members of the Putative Classes resulting in injuries and damages to them.

**FOURTH CAUSE OF ACTION**
**[Statutory Nuisance – Violation of R.C. 3704.03]**

65.     Representative Plaintiffs incorporate all allegations contained in the preceding paragraphs as if fully rewritten herein.

66.     Ohio Revised Code Section 3704.03 provides that "no person shall cause, permit, or allow emission of an air contaminant in violation of any rule adopted by the director of environmental protection."

67.     As a result of the derailment and subsequent fire and toxic chemical burn, Defendants NSR and NS emitted impermissible amounts of vinyl chloride, an air contaminant.

68.     As a result of Defendants' improper transportation and handling of hazardous materials, Representative Plaintiffs and members of the Putative Classes have been exposed to hazardous air pollutants in violation of Ohio and federal law.

69.     As a direct and proximate result of Defendants' improper transportation and handling of hazardous materials, these materials continuously invaded and contaminated the areas surrounding Representative Plaintiffs and members of the Putative Classes, exposing their properties and persons to unsafe levels of vinyl chloride, butyl acrylate, benzene residue, and other combustible liquids, and as a result of the exposure to these toxins, Representative Plaintiffs and members of the Putative Classes presently suffer and will continue to suffer real property damage, out of pocket expenses, personal property damage, loss of use and enjoyment of property, diminution of property value, loss of business income and goodwill, annoyance, upset, aggravation, inconvenience and emotional distress, an increased risk of associated disease or illness, and the present need for medical monitoring to ensure early detection of any such disease or illness.

## FIFTH CAUSE OF ACTION
### [Strict Liability]

70.     Representative Plaintiffs incorporate all allegations contained in the preceding paragraphs as if fully rewritten herein.

71.     The transportation of the toxic and flammable substance vinyl chloride is an abnormally dangerous and ultrahazardous activity as defined in Restatement (Second) of Torts §§ 519 and 520.

72.     At all times relevant herein, Defendants NSR and NS were engaged in abnormally dangerous and ultrahazardous activity making Defendants strictly liable under federal, state, and local laws and/or regulations for any conduct that results in injuries to persons or property in violation of those laws.

73.     As a direct and proximate result of Defendants' abnormally dangerous and ultrahazardous activity, Representative Plaintiffs and members of the Putative Classes sustained injuries and damages for which Defendants are strictly liable, jointly, and severally, without regard to fault.

## SIXTH CAUSE OF ACTION
### [Medical Monitoring]

74.     Representative Plaintiffs incorporate all allegations contained in the preceding paragraphs as if fully rewritten herein.

75.     Representative Plaintiffs Michael Loyd, Zoey Spellman, and Jennifer Gray and the other individual members of the Putative Classes have been exposed to vinyl chloride and other hazardous chemicals at levels that are far higher than normal levels. Vinyl chloride and the other hazardous chemicals are highly toxic substances that have been proven to cause cancer and other diseases in humans.

76.     Representative Plaintiffs and the other individual members of the Putative Classes were exposed to these toxic substances including, but not limited to, vinyl chloride, hydrochloric acid, and phosgene, due to the negligent, ultrahazardous, and willful and wanton conduct of Defendants NSR and NS.

77.     As a direct and proximate result of their exposure to these toxic substances including, but not limited to, vinyl chloride, hydrochloric acid, and phosgene, Representative Plaintiffs and the other individual members of the Putative Classes have a significantly increased risk of developing cancer and other diseases. This increased risk makes periodic medical examinations necessary.

78.     As a result of the negligent, ultrahazardous, and willful and wanton conduct of Defendants NSR and NS, Representative Plaintiffs and other individual members of the Putative Classes should be awarded the costs of medical monitoring.

## SEVENTH CAUSE OF ACTION
### [Willful and Wanton Misconduct/Punitive Damages]

79.     Representative Plaintiffs incorporate all allegations contained in the preceding paragraphs as if fully rewritten herein.

80.     At all times relevant, Defendants NSR and NS owed a duty to Representative Plaintiffs and other members of the Putative Classes, as well as the public, to refrain from willful, wanton, reckless, and outrageous conduct or conduct which exhibited an utter indifference to and/or conscious disregard for their health, safety, and well-being.

81.     Upon information and belief, at all times relevant herein, Defendants NSR and NS were aware that the hazardous materials they transported were highly carcinogenic and/or otherwise harmful to humans and were aware of the health risks associated with the release of

vinyl chloride, butyl acetate, benzene residue, phosgene, and hydrogen chloride into the air, water, and land including, but not limited to, the risk of causing cancers and other diseases.

82.     Upon information and belief, at all times relevant herein, Defendants NSR and NS were aware that their transportation and release of vinyl chloride, butyl acetate, benzene residue, phosgene, and hydrogen chloride could result in an unreasonably dangerous emission of hazardous materials into the environment.

83.     Upon information and belief, Defendants NSR and NS were aware that at least one rail car was malfunctioning for approximately 20 miles before the derailment occurred.

84.     Notwithstanding this knowledge, Defendants NSR and NS continued to engage in such conduct which, at a minimum, they knew was in conscious disregard for the rights and safety of the public including Representative Plaintiffs and members of the Putative Classes.

85.     Defendants engaged in actions in its operation, inspection, and maintenance of its railway and rail cars that were extremely reckless, egregious, and in conscious disregard for the public including Representative Plaintiffs and members of the Putative Classes.

86.     Defendants' conduct was willful, wanton, reckless, and outrageous under the circumstances given the substantial risk of catastrophic consequences and demonstrated an utter indifference to and/or conscious disregard for the health, safety, and well-being of Representative Plaintiffs and members of the Putative Classes.

87.     Defendants' willful, wanton, and extremely reckless and egregious conduct engaged in with conscious disregard for the public including Representative Plaintiffs and members of the Putative Classes caused significant injuries and damages to the Representative Plaintiffs and members of the Putative Classes.

88.     Defendants' willful, wanton, and extremely reckless and egregious conduct demonstrated such flagrant disregard for the public including Representative Plaintiffs and members of the Putative Classes so as to constitute malice.

89.     As a result of Defendants extremely reckless and egregious conduct, Representative Plaintiffs and members of the Putative Classes are entitled to recover punitive damages.

WHEREFORE, Representative Plaintiffs, on their own behalf and on behalf of the members of the Putative Classes, demand judgment in their favor against Defendants NSR and NS, jointly and severally, in an amount in excess of $5,000,000.00, exclusive of interest and costs, and to award Representative Plaintiffs and members of the Putative Classes the following relief:

a.      Certification of classes consisting of Representative Plaintiffs and other persons similarly situated who were adversely affected by a train derailment and chemical spill which occurred on February 3, 2023, in or near East Palestine, Ohio, and which are defined as follows:

(1)     **Medical Monitoring Class**:  All individuals who resided within a 15-mile radius (the "Class Zone") of 1020 East Taggart Street, East Palestine, Ohio 44413, as of February 3, 2023;

(2)     **Residential Property Damage Class**:  All individuals who owned, leased, or resided in a property within a 15-mile radius (the "Class Zone") of 1020 East Taggart Street, East Palestine, Ohio 44413, as of February 3, 2023.

(3)     **Business Class**: All individuals and entities who owned and/or operated a business, commercial property, or farmland within a 15-mile radius (the "Class Zone") of 1020 East Taggart Street, East Palestine, Ohio 44413, as of February 3, 2023;

b.      Compensatory damages including, but not limited to, damages for diminution of property values, costs of repairs and remediation, loss of use of the property, and physical and emotional discomfort;

c.       The cost of medical monitoring;

d.       Punitive damages;

e.       Attorney's fees and costs; and

f.       Such other and further relief as this Court deems just and proper.

Dated: March 24, 2023                        Respectfully submitted,


                                             */s/ Daniel N. Abraham*
                                             Daniel N. Abraham (0023457)
                                             David I. Shroyer (0024099)
                                             Michael T. Rapier  (093826)
                                             ***Colley Shroyer & Abraham Co., LPA***
                                             536 South High Street
                                             Columbus, Ohio 43215
                                             T: (614) 228-6453
                                             F: (614) 228-7122
                                             E:  dabraham@csajustice.com
                                             E:  dshroyer@csajustice.com
                                             E:  mrapier@csajustice.com
                                             *Trial Attorneys for Plaintiffs*



                                             */s/ D. David Altman*
                                             D. David Altman (0021457)
                                             Justin D. Newman (0080968)
                                             Amy J. Leonard (0040611)
                                             ***AltmanNewman Co. LPA***
                                             15 East 8th Street, Suite 200W
                                             Cincinnati, Ohio 45202
                                             T: (513) 721-2180
                                             F: (513) 721-2299
                                             E: daltman@environlaw.com
                                             E. jnewman@environlaw.com
                                             E. aleonard@environlaw.com
                                             *Co-Counsel for Plaintiffs*

## <u>JURY DEMAND</u>

Representative Plaintiffs hereby demand a trial by jury on all issues triable thereto.

Dated: March 24, 2023                    Respectfully submitted,

<u>/s/ Daniel N. Abraham</u>
Daniel N. Abraham (0023457)
David I. Shroyer (0024099)
Michael T. Rapier (093836)
***Colley Shroyer & Abraham Co. LPA***
536 South High Street
Columbus, Ohio 43215
T: (614) 228-6453
F: (614) 228-7122
E:  dabraham@csajustice.com
E:  dshroyer@csajustice.com
E:  mrapier@csajustice.com
*Trial Attorneys for Plaintiffs*

<u>/s/ D. David Altman</u>
D. David Altman (0021457)
Justin D. Newman (0080968)
Amy J. Leonard (0040611)
***AltmanNewman Co. LPA***
15 East 8th Street, Suite 200W
Cincinnati, Ohio 45202
T: (513) 721-2180
F: (513) 721-2299
E: daltman@environlaw.com
E. jnewman@environlaw.com
E. aleonard@environlaw.com
*Co-Counsel for Plaintiffs*